UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:22-CV-504-JES-KCD

JOSEPH PARISI,

                    Plaintiff,

vs.

SABAL SPRINGS HOMEOWNERS'
ASSOCIATION, INC.,

                    Defendant.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
## (INJUNCTIVE RELIEF SOUGHT)

COME NOW Plaintiff JOSEPH PARISI and Plaintiff TERRY CLARK, by and through undersigned counsel, and sue the Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC., stating:

### I. NATURE OF THE ACTION

1.      This is a civil action brought pursuant to the federal Fair Housing Act ["FHA"], 42 U.S.C. §§ 3601, *et seq.*, and 42 U.S.C. § 1982 for damages and injuries arising from the Defendant's, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC.'s, unlawful discrimination against Plaintiff JOSEPH PARISI, a person with disabilities, and against Plaintiff TERRY CLARK, a person associated with a person with disabilities.

### II. PARTIES

**EXHIBIT A**

1

2.      Plaintiff JOSEPH PARISI ["PARISI"], a resident and citizen of Lee County, Florida, is an individual with a disability that qualifies him for the protections of the FHA.

3.      PARISI resides at 3791 Gloxinia Drive, North Fort Myers, Florida 33917.

4.      Plaintiff TERRY CLARK ["CLARK" and "Plaintiffs" when collectively referred to with PARISI] resides, and at all times relevant resided, with PARISI at 3791 Gloxinia Drive, North Fort Myers, Florida 33917.

5.      Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC. [hereafter "SABAL SPRINGS" and/or "Association" and/or "Defendant"], is a Florida non-profit corporation, organized and operating pursuant to Chapter 720, Florida Statutes.

6.      SABAL SPRINGS' principal and mailing addresses are 13831 Vector Avenue, Fort Myers, Florida 33907.

7.      SABAL SPRINGS is responsible for administering and governing the SABAL SPRINGS Community pursuant to SABAL SPRINGS' Declaration, Articles of Incorporation, By-Laws, Rules and Regulations, and amendments thereto. It also sets, approves, and enforces the policies, rules, regulations, and practices for the SABAL SPRINGS Community.

8.      The housing units governed by SABAL SPRINGS are "dwellings" within the meaning of 42 U.S.C. § 3602(b) of the FHA.

9.      SABAL SPRINGS is subject to the anti-discrimination provisions of the FHA.

### III.  JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § §§ 3601, *et seq.*, and 42 U.S.C. § 3613.

11.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the parties reside in this District, Defendant's principal place of business is in Lee County, and the events giving rise to the Plaintiffs' claims arose in Lee County which is within the Fort Myers Division of the Middle District of Florida.

12.    Any and all conditions precedent to the bringing of this action by Plaintiffs have occurred, or their performance has been waived by Defendant.

## IV.  FACTUAL ALLEGATIONS

13.    PARISI and CLARK own and at all times material hereto, have resided at 3791 Gloxinia Drive, North Fort Myers, Florida 33917, a separately detached, 1600-square-foot-plus house located within the SABAL SPRINGS community.

14.    At all times material hereto, PARISI suffered from and still suffers from mental impairments that substantially limit one or more of his major life activities. Accordingly, PARISI has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA.

15.    PARISI relies upon an assistance animal, a dog named "Rokco," that Parisi has had since July of 2019, when Rokco was seven weeks old.  Rokco assists PARISI in coping with his disabilities.

16.    Rokco is not a pet.

17.    In addition to providing emotional support that helps ameliorate the symptoms of PARISI's depression and anxiety, Rokco has set times for walking and eating and alerts PARISI to these times.

18.    If PARISI is having an anxiety attack, Rokco will alert him to take his medication.

19.    If PARISI is severely depressed, Rokco will pace continuously between PARISI and the door until PARISI takes him out. Getting outside and walking elevates PARISI's mood.

20.    CLARK has two pet dogs, a Jack Russel Terrier/Chihuahua mix named "Soonie" and a Jack Russel Terrier named "Riley."

21.    Prior to moving into their Gloxinia Drive home, CLARK intended to leave Soonie to live with CLARK's son in Michigan. Circumstances changed and unexpectedly, Soonie also came to live at the Gloxinia Drive home.

22.    In or around February 24, 2022, SABAL SPRINGS's rules restricted residents to two (2) pet dogs.

23.    On or around February 24, 2022, SABAL SPRINGS, by and through its agent and property manager Donna Basile ["Property Manager"], sent a letter to PARISI labeled "First Inspections" stating:

> **Issue:**  It has been observed that you have three (3) dogs.
>
> **Document Cited:** Rules and Regulations: Section 11: Pets -Owners may keep no more than two (2) dogs, Section A: Service or support Animals.
>
> **Resolution:** Is one of your dogs a service or support animal? Please notify the HOA Office.

and otherwise threatening that PARIS had "within thirty (30) days" to "correct this violation" else receive a "second and final notice to conform." The 2/24/2022 "First Inspections/Multi-Dog Threat Letter" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 1" (emphasis in original).

4

24.   At all times relevant Donna Basile was SABAL SPRINGS' "Community Association Manager" and agent.

25.   On or around March 7, 2022, PARISI informed Donna Basile that his dog Rokco is an assistance animal and provided a letter dated August 11, 2020, signed by Dr. Andrew Isaacson, verifying that PARISI has a disability and that Rokco provides PARISI disability-related emotional support. The 8/11/2020 "Verification Letter" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 2."

26.   Dr. Isaacson has declared under penalty of perjury as to the authenticity of the August 11, 2020, Verification Letter. Declaration of Dr. Isaacson is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 3."

27.   Donna Basile told PARISI that the Verification Letter from Dr. Isaacson should suffice, but also asked PARISI if he had a more current letter.

28.   PARISI stated that he did not have a more current letter but promised he would obtain one as soon as he returned to Michigan, his second home, and could make an appointment with his health care provider.

29.   Basile agreed. Sabal Springs' 3/7/2022 request for "the updated letter from [PARISI's] physician" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 4."

30.   In further support of his request for reasonable accommodation, on or around April 7, 2022, PARISI provided a letter to SABAL SPRINGS from his treating physician, Douglas J. Zakolski, D.O., stating:

> *Joseph Parisi is under my medical care. I am familiar with his medical history and the functional limitations imposed by his mental illness. Mr Parisi meets the definition of mental and/or emotional disability. Due to his mental illness, this individual has certain limitations related to social interaction and coping with stress. To help alleviate these difficulties, and to enhance his ability to live independently, Mr. Parisi has been recommended to obtain an emotional support animal canine companion. The presence of an emotional support animal is necessary to mitigate his symptoms Mr. Parisi should be allowed to have his emotional support animals [sic].*

The 04/07/2022 2nd Verification Letter from Dr. Zakolski is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 5."

31.     Dr. Zakolski has declared under penalty of perjury as to the authenticity of the April 7, 2022, Verification Letter. Declaration of Dr. Zakloski is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 6."

32.     On April 7, 2022, SABAL SPRINGS, through its attorney-agent Robert B. Burandt, acknowledged both PARISI's request for an accommodation of his disability and the receipt of PARISI's physician's letter, but denied PARISI's request:

> *Thank you for your Doctor's letter regarding your emotional support animal. No one is saying you can not [sic] have this dog, the rules same [sic] two dogs and that is what is being enforced[,]*

wholly disregarding that PARISI's request was for waiver of SABAL SPRINGS' two-dog restriction as an accommodation of his disability-related need to live with his emotional support animal ["ESA"]. The Burandt 04/07/2022 "ESA Email" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 7."

33.     In an effort to educate SABAL SPRINGS' attorney-agent, PARISI responded: "*My emotional support animal is not considered a dog or pet under Florida laws.*"   PARISI's

04/07/2022 "ESA Clarification Response Email" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 8."

34.    SABAL SPRINGS' attorney-agent replied:

> *Not sure what you are getting it [sic] is not a dog, it is a dog? This [sic] not my call, I suggest you petition the Board. My opinion is that they should not deny your request for an emotional support dog but should deny your requests for three dogs, that is a reasonable accommodation.*

The Burandt 04/07/2022 "ESA Reply Email" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 9."

35.    PARISI responded: "*I really don't want to make waves and I value your opinion as an attorney so I will be contacting the ADA regarding this matter and will be contacting the Sable Springs board*" to which SABAL SPRING's attorney-agent, further evidencing SABAL SPRINGS' misunderstanding of both ESA and service animal law as well as ignorance of black-letter law that waiver of a rule or policy, such as a two-dog-only rule, is itself a reasonable accommodation of a disability-related need for an ESA or service animal, replied:

> *Sounds reasonable, but I hope you understand?* **The HOA is only obligated to provide you with reasonable accommodations not waive rules and regulations. If they just conceded they may be considered to have waived the rule. If the court tells them otherwise and your [sic] allowed three dogs then so be it**. *I don't think that will happen but you never know.*

PARISI and Burandt 04/07/2022 "Further Email Exchange" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 10" (emphasis added).

36.     In its April 7, 2022, attorney-agent's reply, SABAL SPRINGS made clear its denial

of PARISI's request for waiver of its two-dogs-only rule as an accommodation of his

disability-related need for his ESA and its threat of legal proceedings. *Id.*

37.     On April 19, 2022, PARISI received an email from the President of SABAL

SPRINGS stating:

> *Mr Parisi,*
>
> *The documents you have sent have already been received.  As stated,
> the association is not refusing the service dog.  The association is
> enforcing the 2 dog rule as stated in the documents. Any further
> discussion should be directed to the attorney.*
>
> *Tony Cantabene*
> *President*
> *Sabal Springs HOA*

SABAL SPRINGS' President's 04/19/2022 "Enforcement Email" is marked, filed

contemporaneously, and incorporated herein as "Ps' Exhibit 11."

38.     On May 16, 2022, by way of a formal letter through its attorney-agent Burandt,

SABAL SPRINGS repeated its denial of PARISI's request for reasonable accommodation

of his disability, as well as its threat of rules enforcement:

> *…I was asked to respond by the Sabal Springs HOA to your request for a
> third animal. The HOA has no problem with you having a service animal.
> However, the letter from Mr. Parisi's doctor states an emotional support
> animal is recommended, which is no issue, but this [sic] not a service
> animal. There is still an issue with three dogs being in the residence. The
> rules have been place [sic] for several years limiting the number of dogs per
> household to two (2), and unless modified will be enforced.*

The 05/16/2022 "Formal Denial Letter" is marked, filed contemporaneously, and

incorporated herein as "Ps' Exhibit 12" (emphasis added).

39.     SABAL SPRINGS' communications make it clear that persons with disabilities that rely upon assistance animals and the partners of persons with disabilities that rely upon assistance animal do not enjoy the same right to own pets as non-disabled residents.

40.     SABAL SPRINGS' informed PARISI that it need not accommodate an emotional support animal as opposed to a service animal, so PARISI obtained and provided yet another letter from Dr. Zakolski stating that the presence of a service animal was necessary to mitigate PARISI's symptoms. The "3rd Verification Letter" by a physician (Dr. Zakolski on June 6, 2022) is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 13."

41.     Dr. Zakolski has declared under penalty of perjury as to the authenticity of the June 6, 2022, Verification Letter.  Declaration of Dr. Zakloski; Ps' Exhibit 6.

42.     Between July 14th and 18th, 2022, an email exchange that took place between PARISI and SABAL SPRINGS' attorney-agent Burandt, in which SABAL SPRING again confirmed that SABAL SPRINGS would not waive its two-pet rule so that PARISI's assistance animal and his partner's two pet dogs could live in their home at SABAL SPRINGS. The "Final Emails" are marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 14."

43.     On July 27, 2022, SABAL SPRINGS through counsel sent PARISI and CLARK a letter demanding that they "either limit yourself to two (2) dogs or submit to presuit mediation pursuant to Section 720.311, Fla. Stat. within twenty (20) days of the date of this letter." The July 27, 2022, "Pre-Suit Mediation Demand" is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit 15."

44.     The Pre-Suit Mediation Demand further threatens Plaintiffs that if they fail to respond within 20 days, or fail to "agree to at least one of the mediators that we have suggested or to pay or prepay the mediator one-half of the costs involved", SABAL SPRINGS "will be authorized to proceed with the filing of a lawsuit against you without further notice and may seek an award of attorney's fees or costs incurred in attempting to obtain mediation." *Id.*

45.     The Pre-Suit Mediation Demand was sent because PARISI asked that his disability-related need to reside with Rokco be accommodated notwithstanding the fact that CLARK has two pet dogs.

46.     The Pre-Suit Mediation Demand expressly states "we have been directed to contact you regarding your request to have three (3) dogs[,]" i.e., regarding "PARISI's request for reasonable accommodation." *Id.*

47.     At all times material, SABAL SPRINGS was aware of PARISI's disability and that his dog is necessary to mitigate the symptoms of his disability.

48.     The confusing and threatening nature of SABAL SPRINGS' communications to PARISI regarding his assistance animal, coupled with legal inaccuracies of the law and threat of court

intervention, have caused PARISI to be anxious, depressed, and for both Plaintiffs to feel unwelcome in their own home and in the SABAL SPRINGS community.

49.     On August 18, 2022, PARISI filed a Complaint and Demand for Jury Trial (Injunctive Relief Sought) with this Court challenging SABAL SPRINGS actions in its handling of his request for reasonable accommodation and alleging its discrimination under the FHA. (Doc. #1).

50.     On August 23, 2022, SABAL SPRINGS approved several amendments to its

existing Rules and Regulations, which included amendment of its "Pets" provision to:

11. <u>Pets</u>

No reptiles, wildlife, livestock, poultry or animals of any kind shall be raised, bred or kept on any Lot except the Owners may keep no more than two (2) dogs and two (2) household pets provided they are not kept, bred or maintained for any commercial purpose, and provided that they do not become a nuisance or annoyance to any neighbor by reason of barking or otherwise.  All pets must be on a leash, in container or carried when outside of the home.  No dogs or other pets shall be permitted to have excretions on any common areas, except areas designated by the Association, and owners shall be responsible for the clean-up after their pets.  For purposes hereof, "household pets" shall mean cats, parakeets and other animals that may be expressly permitted by the Board of Directors, if any but shall specifically exclude any of the following breeds including, without limitation, Doberman Pinchers, Pit Bulls, Rottweilers or German Shepherds.  Nothing contained herein shall prohibit the keeping of fish or domestic (household-type) birds, as long as the latter are kept indoors and do not become a source of annoyance to the neighbors.  The Board of Directors may also place additional restrictions on the privilege of keeping pets in the community.

**A.  Service and support animals will be handled on a case-by-case basis by the Board of Directors.  Service and Emotional Support Animals are included in the two (2) dog and two (2) household pets limit and are not in addition to the two (2) dog and two (2) household pets' limit.** Animals that are "individually trained to meet the needs of one person's disability" are considered to be service animals.  **Owners who require a service or support animal as prescribed by a medical professional must provide to the Association a Certificate of**

**Proof that the owner does in fact require or needs a service or support animal.  In addition, when out in public, the service or support animal shall wear the appropriate service or support vest.**
  B. Pets are NEVER allowed on the golf course at any time.
  C. It is illegal to feed the wildlife, including, but not limited to, alligators, ducks, birds and other fauna in the community.

Pertinent Excerpts of Sabal Springs Golf and Racquet Club Rules and Regulations, amended and approved 8/23/2022 ["Amended Rules"], are marked, filed contemporaneously, and incorporated herein collectively as "Ps' Exhibit16" (emphasis added).

51.    On September 23, 2022, SABAL SPRINGS sent a mass email to all Members of the SABAL SPRINGS Community, including the Plaintiffs, announcing that its Rules and Regulations has been amended and emphasizing that the amendments were to "Section 11- Pets." SABAL SPRINGS 9/23/2022 mass email is marked, filed contemporaneously, and incorporated herein as "Ps' Exhibit17."

52.    At all times during the process of amending and amendment approval to its Rules and Regulations, SABAL SPRINGS had actual knowledge of PARISI's disability, disability-related need for an accommodation, and that CLARK was a person associated with a person with a disability and disability-related need for an accommodation.

53.    SABAL SPRINGS intentionally and/or otherwise recklessly amended the Pets provision of its Rules and Regulations to specifically target the Plaintiffs.

54.    The August 23, 2022, amendment to SABAL SPRINGS' Section 11 "Pets" of its Rules and Regulations expressly prevents disabled residents that rely upon service or

assistance animals, and persons living with disabled residents that rely upon service or assistance animals, from having two (2) pets.

55.     The August 23, 2022, amendment to SABAL SPRINGS' Section 11 "Pets" of its Rules and Regulations expressly denies disabled residents, and persons living with disabled residents, the same rights as non-disabled residents and persons.

56.     Upon information and belief, Attorney Burandt specifically directed, contributed to, and/or otherwise incited SABAL SPRINGS' changes to the Pet provision of its Rules and Regulations.

57.     SABAL SPRINGS' actions were, and continue to be, intentional, deliberate, willful, and in total and reckless disregard of Plaintiffs' rights and show total indifference to PARISI's disability.

58.     SABAL SPINGS' pet policy and its amended Rules and Regulations were, and continue to be, violative of the FHA.

59.     Plaintiffs have been injured by SABAL SPRINGS' discriminatory housing practices and therefore qualify as "aggrieved person(s)" pursuant to 42 U.S.C. § 3602(i).

60.     As a direct and proximate result of SABAL SPRINGS' conduct, PARISI has incurred and continues to incur attorney's fees, and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

61.     As a direct and proximate result of SABAL SPRINGS' conduct, CLARK has incurred and continues to incur attorney's fees, and has suffered and continues to suffer

irreparable loss and injury including, but not limited to, loss of her right to equal housing opportunities regardless of association with a person with a disability.

62.     Plaintiffs have retained undersigned counsel and are obligated to pay a reasonable fee for their services.

## V. CAUSE OF ACTION

### COUNT I
### FAILURE TO REASONABLY ACCOMMODATE

63.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-62 as if fully set forth herein.

64.     PARISI is disabled by virtue of a mental impairment which substantially limits one or more of his major life activities.

65.     PARISI has a disability-related need to live with his assistance animal, Rokco, in order to have the same opportunity to use and enjoy his dwelling at SABAL SPRINGS as any non-disabled resident.

66.     CLARK is a person associated with a person with a disability.

67.     CLARK has two pet dogs.

68.     PARISI requested that SABAL SPRINGS waive its rule limiting residents to two dogs so that in addition to CLARK's two pet dogs, he may reside with his assistance animal Rokco.

69.     SABAL SPRINGS was provided reliable verification of PARISI's disability and disability-related need to live with his assistance animal Rokco.

70.     Defendant, fully knowing of PARISI's disability-related need to live with his assistance animal, refused to waive the rule restricting residents to two dogs per household.

71.     SABAL SPRINGS had actual knowledge of PARISI's disability and disability-related need to live with Rokco.

72.     Defendant had a legal obligation to make a fact-specific determination regarding whether PARISI's assistance animal could be accommodated, which at the very least would have required speaking with PARISI rather than sending communications containing legally false statements of the law regarding service and assistance animals.

73.     Defendant made no effort to engage in a good faith dialogue with PARISI regarding implementation of his request for reasonable accommodation.

74.     Accommodating PARISI's need to reside with his assistance animal would not result in substantial physical damage to the property of others.

75.     Accommodating PARISI's need to reside with his assistance animal would not pose an undue financial or administrative burden on SABAL SPRINGS.

76.     Accommodating PARISI's need to reside with his assistance animal would not fundamentally alter the nature of SABAL SPRINGS' operations.

77.     SABAL SPRINGS' actions and conduct constitute a conscious and reckless disregard for PARISI's rights, and show total indifference for his disability.

78.     The foregoing conduct and acts of Defendant constitute discrimination against a person with a disability in violation of 42 U.S.C.§ 3604(f)(3)(B), FHA, by failing to and/or by refusing to make reasonable accommodations in its rules, policies, practices, or

15

services, when such accommodations are necessary to afford PARISI an equal opportunity to use and enjoy his dwelling.

79.     The foregoing conduct and acts of Defendant also constitute discrimination against a person living with a person with a disability in further violation of the FHA.

80.     As a result of the Defendant's conduct, Plaintiffs have suffered damages.

81.     The discriminatory conduct and actions of Defendant were intentional, willful, and taken in blatant disregard for the Plaintiffs' rights.

82.     As a direct and proximate result of SABAL SPRINGS' failure to accommodate, PARISI has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

83.     As a direct and proximate result of SABAL SPRINGS' failure to accommodate, CLARK has also suffered irreparable loss and injury including, but not limited to, loss of her right to equal housing opportunities regardless of her association with a person with a disability.

**WHEREFORE,** Plaintiffs JOSEPH PARISI and TERRY CLARK demand judgment against Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC., declaring that the actions of SABAL SPRINGS violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability and a person associated with a person with a disability, and awarding Plaintiffs compensatory and punitive damages and their attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

**COUNT II**
**ILLEGAL INTIMIDATION AND**
**THREATS OF LIABILITY FOR SABAL SPRINGS' ATTORNEYS' FEES**

84.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-62 as if fully set forth herein.

85.     Pursuant to 42 U.S.C. §3617, [i]t is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 USCS § 3603, 3604, 3605, or 3606]."

86.     On July 22, 2022, through its counsel Attorney Burandt, Defendant demanded that Plaintiffs' either "limit" themselves to two dogs or submit to pre-suit mediation otherwise "suit may be brought against you by the Association without further warning." (Exhibit 15; Pre-Suit Mediation Demand.)

87.     On September 12, 2022, through its counsel Attorney Burandt, Defendant emailed a letter to Plaintiffs' counsel threatening to file an attached motion for sanctions seeking to hold Plaintiff PARISI and his counsel liable for Defendant's attorneys' fees as a sanction for PARISI having exercised his fair housing rights by filing the instant lawsuit.

88.     According to the threatened motion, "[to] file a federal lawsuit alleging that the Defendant Homeowners Association was violating his rights by not allowing Rocko the lab mix to reside in the home is not made in good faith."

89.     The initial Complaint did not allege that Rocko was not allowed to reside "in the home." Rather, the lawsuit clearly alleged that Defendant refused to waive its restriction on residents

having more than two dogs per household, an allegation supported by the exhibits to the Complaint. (Doc. #1).

90.    Also according to the threatened motion, Plaintiff PARISI and Plaintiffs' counsel should be sanctioned because the Association "offered to mediate the dispute with the Plaintiff and Plaintiff refused to mediate thus failing to exhaust his administrative remedies."

91.    Binding precedent in this District has undisputedly established that fair housing litigants have no obligation to exhaust administrative remedies as a precondition to filing a complaint in federal court.

92.    Binding precedent in this District has also undisputedly established that filing and pursuing a housing discrimination complaint constitutes protected activity.

93.    By threatening to file a lawsuit without further notice and possibly seek an award of attorney's fees from Plaintiffs, Defendant clearly intended to intimidate Plaintiff PARISI into abandoning his fair housing rights.

94.    By threatening to file a baseless motion for sanctions seeking to hold Plaintiff PARISI liable for SABAL SPRING's attorney's fees, Defendant clearly intended to intimidate Plaintiff PARISI into abandoning his fair housing rights.

95.    SABAL SPRINGS violated 42 U.S.C. § 3617 of the FHA by coercing, intimidating, threatening, and interfering with PARISI in the exercise and enjoyment of his Fair Housing rights.

96.    The discriminatory conduct of SABAL SPRINGS was intentional, willful, and taken in disregard for PARISI's rights.

97.     As a direct and proximate result of the Defendant's conduct, PARISI has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

WHEREFORE, Plaintiff JOSEPH PARISI demands judgment against Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC., declaring that the actions of SABAL SPRINGS violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person with a disability, and awarding him compensatory and punitive damages and his attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

### COUNT III
### ILLEGAL DISCRIMINATION IN THE TERMS, CONDITIONS, OR PRIVILEGES OF SALE OF A DWELLING

98.     Plaintiffs re-allege and incorporate by reference Paragraphs 1-62 as if fully set forth herein.

99.     42 U.S.C. § 3604(f)(2) provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of" that person, a person residing in that dwelling or any person associated with that person.

100.    CLARK is associated with and resides with PARISI, a person with a disability, and is therefore a member of a protected class.

101.    Because PARISI relies upon an assistance animal for disability-related support,

SABAL SPRINGS will only allow CLARK to have one pet dog in her dwelling.

102.    SABAL SPRINGS residents that do not reside with disabled persons that have assistance animals have the privilege of having two pet dogs.

103.    SABAL SPRINGS' rules treat residents that live with or are associated with disabled residents who rely on assistance animals differently than other residents.

104.    SABAL SPRINGS violated 42 U.S.C. § 3604(f)(2) of the FHA by discriminating against CLARK in the terms, conditions, or privileges of sale or rental of a dwelling.

105.    The discriminatory conduct of SABAL SPRINGS was intentional, willful, and taken in disregard for CLARK's rights.

106.    As a direct and proximate result of the Defendant's conduct, CLARK has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of her association with a person with a disability.

   WHEREFORE, Plaintiff TERRY CLARK demands judgment against Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC., declaring that the actions of SABAL SPRINGS violated, *inter alia*, the Fair Housing Amendments Act by discriminating against a person associated with a person with a disability, and awarding her compensatory and punitive damages and her attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

## V.    THIS COURT'S POWER TO GRANT RELIEF

107.    Plaintiffs re-allege and incorporate by reference Paragraphs 1-62 as if fully set forth herein.

108.    Plaintiffs have suffered and incurred irreparable damage, and continues to suffer

and incur irreparable damage.

109.    The FHA and Rule 65 of the Federal Rules of Civil Procedure, collectively and

singularly, empower this Court to grant a temporary restraining order, preliminary

injunctive and permanent injunctive relief, and/or such other relief as the Court may

deem appropriate to hold and redress the violations of any provision of law enforced by

the FHA. The Court, in the exercise of its equitable jurisdiction may award financial relief,

accommodation directives, policy modification, and restoration of access privileges to

prevent and remedy any violation of any provision of law enforced by the FHA.

### VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff JOSEPH PARISI and Plaintiff TERRY CLARK demand

judgment against Defendant, SABAL SPRINGS HOMEOWNERS' ASSOCIATION, INC.,

which:

a.      declares that SABAL SPRINGS' actions violated the FHA by discriminating

against a person with disabilities;

b.      declares that SABAL SPRINGS' actions violated the FHA by discriminating

against a person associated with a person with disabilities;

c.      enjoins SABAL SPRINGS from discriminating against PARISI by forcing

removal of his assistance animal from his home or otherwise fining, threatening

to fine, or otherwise enforcing its two-dogs-only rule and instead granting

PARISI's request for the reasonable accommodation of his disability-related need

for his assistance animal by waiving any restriction that would prevent him from

21

living with Rokco as his assistance animal so long as he is a resident of SABAL SPRINGS;

d.      awards Plaintiffs compensatory damages as would fully compensate them for Defendant's discriminatory conduct;

e.      awards Plaintiffs their attorneys' fees and costs incurred in bringing this action to enforce the FHA;

f.      awards Plaintiffs punitive damages sufficient to punish Defendant for its actions that were willful, wanton, and malicious, or in reckless disregard for the Plaintiffs' rights; and

g.      grants any other such relief as this Court deems just and equitable.


## VII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.


VENZA LAW, PLLC
931 Village Boulevard, #905-322
West Palm Beach, FL 33409
Office: (561) 596-6329
Email: dvenza@venzalawpllc.com


BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
*Counsel for Plaintiffs*

MARCY I. LAHART, P.A.
249 SE Tuscawilla Road
Micanopy, FL 32667
Telephone: (352) 224-5699
Facsimile: (888) 400-1464
Email: marcy@floridaanimallawyer.com


BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH PARISI,

              Plaintiff,

                                    CASE NO. 2:22-cv-504-JES-KCD

vs.

SABAL SPRINGS HOMEOWNERS
ASSOCIATION, INC.,

              Defendant.

_____/

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on this 10th day of November 2022, a true and correct copy of the foregoing **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL (INJUNCTIVE RELIEF SOUGHT)** has been furnished via CM/ECF electronic mail service to the Clerk of the Court and to counsel for Defendant Sabal Springs Homeowners' Association, Inc., Robert B. Burandt, Esq., BURANDT, ADAMSKI, FEICHTHALER & SANCHEZ, PLLC, 1714 Cape Coral Parkway East, Cape Coral, Florida 33904 at: robert@capecoralattorney.com; burandtlaw@capecoralattorney.com; and paralegal2@capecoralattorney.com.


                                  BY: *s/Denese Venza*
                                  Fla. Bar No. 599220